**Docket No. 22-16654**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

JOSEPH TAYLOR, EDWARD MLAKAR,
MICK CLEARY, EUGENE ALVIS and JENNIFER NELSON,

*Plaintiffs-Appellants,*

v.

GOOGLE LLC,

*Defendant-Appellee.*

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*No. 5:20-cv-07956-VKD · Honorable Virginia K. DeMarchi, Magistrate Judge*

## APPELLANTS' REPLY BRIEF

MARC A. WALLENSTEIN, ESQ.
RYAN Z. CORTAZAR, ESQ.
GEORGE A. ZELCS, ESQ.
KOREIN TILLERY, LLC
205 North Michigan Avenue, Suite 1950
Chicago, Illinois 60601
(312) 641-9750 Telephone
mwallenstein@koreintillery.com
rcortazar@koreintillery.com
gzelcs@koreintillery.com

GLEN E. SUMMERS, ESQ.
ALISON WHEELER, ESQ.
BARTLIT BECK, LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
(303) 592-3100 Telephone
glen.summers@bartlit-beck.com
alison.wheeler@bartlit-beck.com

CAROL O'KEEFE, ESQ.
MICHAEL E. KLENOV, ESQ.
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, Missouri 63101-1625
(314) 241-4844 Telephone
cokeefe@koreintillery.com
mklenov@koreintillery.com

*Attorneys for Appellants Joseph Taylor, Edward Mlakar, Mick Cleary, Eugene Alvis and Jennifer Nelson*

 

## TABLE OF CONTENTS

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

I.      Plaintiffs State a Claim for Conversion .......................................2

      A.    Cellular Data Is Personal Property Subject to Conversion Under California Law .......................................................................2

      B.    Cellular Data Is Property Under the *Rasmussen* Test .........................9

            1.    Cellular Data Can Be Defined Precisely....................................9

            2.    Cellular Data Is Capable of Exclusive Possession and Control ...............................................................12

      C.    Google Consumed Plaintiffs' Cellular Data for Its Own Benefit in a Manner Inconsistent with Plaintiffs' Property Rights.................14

      D.    Plaintiffs Have Alleged that They Were Damaged............................17

      E.    Google's Resort to "Policy Considerations" and Unidentified Alternate Theories of Recovery Is Misplaced....................................19

II.     Plaintiffs State a Claim for Quantum Meruit ...............................21

      A.    The First Amended Complaint Pleads Quantum Meruit as an Independent Cause of Action, Not a "Common Count"....................21

      B.    California Law Does Not Require that Plaintiffs Themselves Provide the Service..............................................................23

      C.    California Law Does Not Require Plaintiffs to Affirmatively Plead a Subjective Expectation of Compensation..............................24

CONCLUSION ..................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Adv. Micro Devices, Inc. v. Intel Corp.*,
  885 P.2d 994 (Cal. 1994) ...................................................................24

*American-Hawaiian Engineering & Const. Co. v. Butler*,
  133 P. 280 (Cal. 1913) ......................................................................23

*Arcturus Mfg. Corp. v. Rork*,
  17 Cal. Rptr. 758 (Cal. Ct. App. 1961) .................................. 25, 26

*Armstrong v. Kubo & Co.*,
  263 P. 365 (Cal. Ct. App. 1928) .......................................................26

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ...........................................................24

*BGC Partners, Inc. v. Avision Young (Canada), Inc.*,
  No. 215CV00531RFBGWF, 2018 WL 3058860
  (D. Nev. June 20, 2018) ......................................................................8

*Boon Rawd Trading Int'l Co. Ltd. v. Paleewong Trading Co. Inc.*,
  688 F. Supp. 2d 940 (N.D. Cal. 2010) ...........................................7, 8

*Carey v. Cusack*,
  54 Cal. Rptr. 244 (Cal. Ct. App. 1966) .................................. 27, 28

*Clark v. Allstate Ins. Co.*,
  106 F. Supp. 2d 1016 (S.D. Cal. 2000) ...........................................22

*DIRECTV, Inc. v. Pahnke*,
  405 F. Supp. 2d 1182 (E.D. Cal. 2005) ...........................................18

*Earhart v. William Low Co.*,
  600 P.2d 1344 (1979) ........................................................................28

*Farmers Ins. Exch. v. Zerin*,
  61 Cal. Rptr. 2d 707 (Cal. Ct. App. 1997) ...................................7, 11

*Freedom from Religion Found., Inc. v. Chino Valley Unified*
    *Sch. Dist. Bd. of Educ.*,
    896 F.3d 1132 (9th Cir. 2018) ...................................................................17

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
    55 Cal. Rptr. 3d 621 (2007) ............................................ 5, 9, 14, 15

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
    958 F.2d 896 (9th Cir. 1992) .............................................. passim

*Gasperini v. Ctr. for Humanities, Inc.*,
    518 U.S. 415 (1996)...................................................................21

*Graham-Sult v. Clainos*,
    756 F.3d 724 (9th Cir. 2014) .......................................................14

*Haggerty v. Warner*,
    252 P.2d 373 (1953) ...................................................................27

*Huskinson & Brown v. Wolf*,
    84 P.3d 379 (Cal. 2004)............................................. 24, 25, 28

*In re De Laurentiis Ent. Group Inc.*,
    963 F.2d 1269 (9th Cir. 1992) ...................................... 26, 27

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589, 599-600 (9th Cir. 2020).......................................29

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012)......................................14

*In re Section 1031 Exch. Litig.*,
    716 F. Supp. 2d 415 (D.S.C. 2010) ...............................................8

*Jogani v. Super. Ct.*,
    81 Cal. Rptr.3d 503 (Cal. Ct. App. 2008).....................................21

*Jordan v. Talbot*,
    361 P.2d 20 (Cal. 1961)......................................................... 15, 16

*Kremen v. Cohen*,
    325 F.3d 1035 (9th Cir. 2003) .......................................................6

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ............................................................ passim

*L.A. Drug Co. v. Superior Court in and for L.A. Cnty.*,
    63 P.2d 112 (Cal. 1936) .................................................................. 25

*Ladewig v. Bank of New York Mellon Corp.*,
    No. CV-20-4032-MWF, 2020 WL 7084541
    (C.D. Cal. Sept. 22, 2020) ............................................................. 21

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir.1999) ............................................................ 6

*McBride v. Boughton*,
    20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004) ...................................... 21, 24

*Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore*,
    76 Cal. Rptr.3d 649 (Cal. Ct. App. 2008) ...................................... 28

*Molsbergen v. United States*,
    757 F.2d 1016 (9th Cir. 1995) ...................................................... 22, 23

*Monster Energy Co. v. Vital Pharm., Inc.*,
    No. EDCV 18-1882 JGB (SHKx), 2019 WL 2619666
    (C.D. Cal. May 20, 2019) ......................................................... 7, 8, 13

*Moore v. Regents of Univ. of Cal.*,
    793 P.2d 479 (Cal. 1990) .............................................................. 20

*Moulin v. Columbet*,
    22 Cal. 508 (1863) ...................................................................... 29

*Newbert v. McCarthy*,
    214 P. 442 (1923) ...................................................................... 29

*Oakdale Village Group v. Fong*,
    50 Cal. Rptr. 2d 810 (Cal. Ct. App. (1996) .................................. 14, 16

*Payne v. Elliot*,
    54 Cal. 339 (1880) ................................................................... passim

*People v. Kwok*,
    75 Cal. Rptr. 2d 40 (Cal. Ct. App. 1998) ...................................... 12

*Potter v. Firestone Tire & Rubber Co.*,
    863 P.2d 795 (Cal. 1993) ............................................................................17

*Schroeter v. Bartlett Syndicate Bldg. Corp.*,
    63 P.2d 824 (Cal. 1936) ...............................................................................5

*Sowash v. Emerson*,
    161 P. 1018 (Cal. Ct. App. 1916) ........................................................ 28, 29

*Terrace Water Co. v. San Antonio Light & Power Co.*,
    82 P. 562 (Cal. Ct. App. 1905) ..................................................................8, 9

*Voris v. Lampert*,
    446 P.3d 284 (Cal. 2019) ...........................................................................3, 7

*Welco Elecs., Inc. v. Mora*,
    166 Cal. Rptr. 3d 877 (Cal. Ct. App. 2014) ........................................ 5, 6, 16

*Yuba River Power Co. v. Nevada Irr. Dist.*,
    279 P. 128 (Cal. 1929) ................................................................... 3, 4, 8, 20

*Zaslow v. Kroenert*,
    176 P.2d 1 (Cal. 1946) ........................................................................ 15, 16

**Statutes**

Cal. Civ. Code § 3523 ...................................................................................24

Cal. Civ. Code § 655 ............................................................................. 4, 8, 9

**Other Authorities**

Restatement (Second) of Torts § 7 (1965) ...................................................18

**Rules**

Fed. R. Civ. P. 8(d)(2) ..................................................................................22

**Treatises**

4 Witkin, Cal. Proc. 6th Plead § 575 (2023) ...............................................22

55 Cal. Jur. 3d Restitution 360-61 (1980) ...................................................24

## INTRODUCTION

The California Supreme Court has made clear that the concept of "property" under California law includes intangible rights of any sort that may be the subject of commerce. Faced with this authority, Google asks the Court to announce a novel exception: that *contractual rights to services* cannot be property. The Court should decline Google's invitation, which is contrary to established California law.

Google's fallback arguments are also without merit. Google interfered with Plaintiffs' exclusive right to use their cellular data by secretly misappropriating it for its own benefit. The cellular data Google used for its own benefit but charged to Plaintiffs' wireless accounts is significant and quantifiable.

Google's misappropriation of Plaintiffs' cellular data injured Plaintiffs. For purposes of a conversion action, the taking of one's property alone is sufficient to establish injury, and the plaintiff need not show any consequential monetary loss.

In an effort to justify its unauthorized misappropriation of consumers' cellular data to build its lucrative businesses, Google misleadingly suggests (at 4) that the network transfers at issue in this case involve "useful functions" like security updates and the use of Google Maps. Not so. Useful network transfers that consumers approved are not what this case is about. This case is about a very different set of secret network transfers that occur in the background, without being approved by the user, which directly benefits Google—not the user. To the extent there are

disputes as to whether consumers consent to or benefit from particular categories of transfers, those factual issues are not appropriate for resolution on a motion to dismiss.

The district court also erred in holding that Plaintiffs failed to state a claim under the equitable doctrine of quantum meruit. Equity imposes an obligation to pay the recipient of services where circumstances indicate that the services were not provided gratuitously. In a case like this sounding in tort—where a defendant has secretly misappropriated services—the Plaintiff need not plead that the parties had a subjective expectation of compensation.

Nor can dismissal of Plaintiffs' quantum meruit claim be defended on the ground that it is a "common count" duplicative of the conversion claim. Quantum meruit has its own, distinct elements and depends on different proof. Under federal pleading standards, quantum meruit is an alternative claim that must be evaluated independently, and Plaintiffs have pleaded all its necessary elements.

## ARGUMENT

### I. Plaintiffs State a Claim for Conversion

#### A. Cellular Data Is Personal Property Subject to Conversion Under California Law

The California Supreme Court has squarely addressed the question whether intangible interests are property under California law, holding that they are. *Payne v. Elliot*, 54 Cal. 339, 342 (1880). In *Payne*, the California Supreme Court held that

"incorporeal, intangible things" are personal property subject to conversion even if they are "incapable of being subjected to actual possession." 54 Cal. at 340 (1880). Under *Payne*, any intangible interest that can be "the subject of contract [and] sale" qualifies as personal property. *Id.* at 342.

Subsequent California Supreme Court decisions define the concept of property even more expansively, to include "every species of ***right*** and ***interest*** capable of being enjoyed as such upon which it is practicable to place a money value." *Yuba River Power Co. v. Nevada Irr. Dist.*, 279 P. 128, 129 (Cal. 1929) (emphasis added). And the California Supreme Court reiterated this point of law just four years ago in *Voris v. Lampert*, 446 P.3d 284, 290 (Cal. 2019) ("intangible property interests, too, can be converted").

In prior cases presenting substantially the same issue as this one, this Court has had no difficulty appreciating the breadth of the concept of property under California law. In *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003), this Court recognized *Payne* as "the leading California Supreme Court case" on the conversion of intangible rights, holding that a domain name was property because under California law the term "property" includes "every ***intangible benefit*** and ***prerogative*** susceptible of possession or disposition." (emphases added). And in *Rasmussen*, this Court explained that the only things that are not property under California law are things that are "free" because they "cannot be reduced to

possession," like "[t]he air we breathe, scenic views, the night sky, the theory of relativity and the friendship of others." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 n.12 (9th Cir. 1992).

These expansive descriptions of the concept of property are based on express California statutes. Section 655 of the California Civil Code provides that "[t]here may be ownership of all inanimate things which are capable of appropriation . . . of all obligations; of such products of labor or skill as the composition of an author, the goodwill of a business, trademarks and signs, and of rights created or granted by statute." Section 654 of the California Civil Code in turn provides that all such things are "called property."

Google's answering brief fails to address any of this controlling authority. Google completely ignores the California Supreme Court's decisions in *Payne* and *Yuba River Power*, as well as this Court's opinion in *Kremen*. Google also ignores Cal. Civ. Code § 655. Instead, Google pretends that these controlling authorities do not exist and urges this federal Court to announce a new rule of California law to the contrary, that contractual rights to services are not personal property capable of conversion.

Controlling California authorities foreclose Google's position. In *Payne*, the California Supreme Court rejected the theory that stock in a company can be converted only by the taking of tangible stock certificates. Instead, the California

Supreme Court identified the converted property interest as the intangible "right consist[ing] of the privilege of voting in the concerns of the corporation, and of participating in the profits of the business" which "subsisted only in law or contract." *Payne*, 54 Cal. at 340; *see also Schroeter v. Bartlett Syndicate Bldg. Corp.*, 63 P.2d 824, 825 (Cal. 1936) ("the relation existing between a corporation and its stockholders is one of contract"). Under *Payne*, the benefits of contractual rights are personal property capable of conversion.

Several California decisions following *Payne* also stand at odds with Google's proposed novel rule of California law. The California Court of Appeal held in *Fremont* that net operating losses were capable of conversion. *Fremont Indem. Co. v. Fremont Gen. Corp.*, 55 Cal. Rptr. 3d 621, 642-644 (2007). And in *Welco Elecs., Inc. v. Mora*, 166 Cal. Rptr. 3d 877(Cal. Ct. App. 2014), the California Court of Appeal held that a credit card balance was subject to conversion. *Id.* at 884. Google (at 34-35) tries to distinguish these cases as involving interests tantamount to money, but that distinction is one invented by Google that cannot be found in the decisions themselves. *Fremont* did not say that net operating losses were comparable to money; it found them to be "comparable to the misappropriation of tangible personal property or shares of stock." *Fremont*, 55 Cal. Rptr. 3d at 643. And *Welco* did not involve mere theft of money—the concurring opinion in *Welco* criticized the majority decision because the majority found conversion of the credit account itself,

rather than theft of money. *Welco*, 166 Cal. Rptr. 3d at 889-891 (Kriegler, J., concurring).

Google's proposed new rule of California law that contractual rights to services are not property is also foreclosed by this Court's precedents. In *Kremen*, the defendant argued that a domain name was "not the type of property subject to conversion" because it was more "service rather than [a] product." *Kremen v. Cohen*, 325 F.3d 1035, 1043 (9th Cir. 2003) (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984-85 (9th Cir.1999) (characterizing a domain name as a "routing service," not a product). The Court acknowledged that a domain name is a routing "service," but still held that the plaintiff had an "intangible property right in his domain name." *Kremen*, 337 F.3d at 1030.

Likewise, *Rasmussen* involved the conversion of an intangible government entitlement akin to a service provided by contract, specifically the "right to *use* the STC as a basis for obtaining an airworthiness certificate." *Rasmussen*, 958 F.2d at 904. Google mischaracterizes (at 32) the property interest in *Rasmussen* as "a kind of quasi-intellectual property" interest. But this Court made clear that the plaintiff's rights were *not* protectable under intellectual property law as either a copyright or patent. *Id.* at 904-05. The Court held that whether something is labeled as "real, personal, intellectual or intangible," has "little substantive significance in determining whether a property right exists." *Id.* at 903 n.14.

6

Against this mountain of controlling authority, Google tries to rely on *Farmers Ins. Exch. v. Zerin*, but that decision held only that "a mere contractual *right of payment*, without more, will not suffice" to support a claim of conversion. 61 Cal. Rptr. 2d 707, 709 (Cal. Ct. App. 1997) (emphasis added). There is a well-established body of law holding that the right to payment, without more, cannot support a claim for conversion. Otherwise, the tort of conversion would "swallow the significant category of contract claims that are based on the failure to satisfy mere contractual right[s] of payment." *Voris*, 446 P.3d at 291. That rule has no application here.

Google also cites (at 20) certain federal district court cases for the proposition that contracts for services cannot create property interests, specifically *Monster Energy Co. v. Vital Pharm., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019), and *Boon Rawd Trading Int'l Co. Ltd. v. Paleewong Trading Co. Inc.*, 688 F. Supp. 2d 940, 955 (N.D. Cal. 2010)). Those decisions, however, are inapposite.

*Boon Rawd* did not hold, as Google suggests, that contractual rights to services cannot be property under California law. The court emphasized at the outset that "*there was never any written contrac*t." 688 F. Supp. 2d at 944 (emphasis in original). The court did go on to observe that the asserted property interest in goodwill was "highly abstract" and that "no California case has ever allowed a conversion claim for contractual rights *to importation*." *Id.* at 955 (emphasis added).

7

But those observations must be understood in context, including the fact that there was no written contract underlying the asserted property rights. *Id.* at 944. Indeed, the court acknowledged that there is a "clear trend that intangible property can be the subject of conversion." *Id.* at 955.

The district court in *Monster Energy* did state that "the benefits of contractual rights are not personal property capable of conversion." *Monster Energy*, 2019 WL 2619666, at *13. But that unpublished decision failed to consider any of the relevant controlling California authority, including *Payne*, *Yuba River Power*, or Cal. Civ. Code § 655.[1] The above statement from *Monster Energy* is simply incorrect. It is also *dicta*, as the court went on to find the interest there to be "analogous to an interest in *real* property." *Monster Energy*, 2019 WL 2619666, at *14 (emphasis added). As the court explained, the tort of conversion is limited to *personal* property and does not apply to *real* property. *Id.*

Google goes on to argue (at 32) that *Terrace Water* holds that electrical service is property only because electricity is capable of being physically "stored,

---

[1] The same is true of the out-of-state decisions *In re Section 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 426 (D.S.C. 2010) and *BGC Partners, Inc. v. Avision Young (Canada), Inc.*, No. 215CV00531RFBGWF, 2018 WL 3058860, at *9 (D. Nev. June 20, 2018), cited in *Monster Energy* and by Google (at 20). Those decisions were animated by the well-established proposition that conversion actions should not be used as a substitute for breach-of-contract claims. *See In re Section 1031*, 716 F. Supp. 2d at 426 ("Such rights are protected by contract law, not tort law."); *BGC Partners*, 2018 WL 3058860, at *9 (pointing to remedies "in contract or interference with contract").

transmitted, and utilized." That is not California's test for property. *Terrace Water* actually described the property interest at issue as a right created by an "agreement" to "continuous service" of electricity. *Terrace Water Co. v. San Antonio Light & Power Co.*, 82 P. 562, 563 (Cal. Ct. App. 1905). Perhaps more importantly, there is no way to physically "store" or "transmit" the corporate rights in *Payne*, the design shortcut rights in *Rasmussen*, the net operating losses in *Fremont*, or the domain name in *Kremen*. Nor is there any basis in Cal. Civ. Code § 655 to limit property to items that can be stored or transmitted.

By urging that property must be capable of being stored and transmitted, Google effectively asks this Court to require that the property at issue be tangible. But the California Supreme Court's decision in *Payne* "rejects the tangibility requirement altogether." *Kremen*, 337 F.3d at 1031.

**B. Cellular Data Is Property Under the *Rasmussen* Test**

**1. Cellular Data Can Be Defined Precisely**

Ignoring the controlling California statues and case law, Google focuses on the test for property articulated in *Rasmussen* and argues that cellular data is not capable of precise definition. But that argument is without merit. Google devotes the first 35 pages of its brief to arguing that plaintiffs' contracts with wireless carriers cannot create property rights that can be converted. In making that argument, Google has no difficulty precisely defining the interest at issue: Plaintiffs'

contractual rights to transmit data over wireless carriers' cellular networks (at 2, 8, 16, 20, 23, 28, 30-32, 35). The district court likewise had no difficulty defining Plaintiffs' alleged property interest. ER-9 (defining it as "a contractual right to access their service provider's cellular data network").

Google's argument distorts what is required under *Rasmussen*. There, this Court reasoned that the "nature and extent" of Rasmussen's rights were precisely defined by his FAA Supplemental Type Certificate ("STC"), which granted him shortcut airworthiness approval rights. *Rasmussen*, 958 F.2d at 903. The "nature and extent" of Plaintiffs' rights are similarly defined in this case by their contracts with mobile carriers, which afford Plaintiffs the right to send a specified amount of information to and from their devices over their respective carriers' networks.[2]

Google attempts to create confusion (at 24, 36-37) by arguing that the term "cellular data" conflates the "means of data transmission, the measurement of that data, and the underlying data transmitted." There is no confusion. The property interest at issue is Plaintiffs' right to transmit a defined quantum of data over their respective carriers' wireless networks—it is not the means of transmission, the measurement of the data, or the underlying data itself.

---

[2] Some (but not all) of those contracts are so-called "unlimited" plans, which impose severe "throttling" of download speeds once a specified limit has been reached, making it impossible to stream video or engage in other data-intensive activities. ER-35 (FAC ¶ 31).

It makes no difference whether the property interest is called a "cellular data allowance" (as in the original Complaint), or simply "cellular data" (as in the Amended Complaint).  Plaintiffs have contracts with wireless carriers pursuant to which they make monthly payments in return for a right to transmit a defined amount of data over the carriers' cellular networks.  That right is the property interest at issue.

Google also mischaracterizes (at 23-25) Plaintiffs' position as arguing that "cellular data plan customers purchase specific 'bytes of cellular data' from a carrier."  Not so.  Although the district court paid lip service to California law holding that intangible rights are property subject to conversion (ER-8), the district court's decision dismissing Plaintiffs' original Complaint effectively faulted Plaintiffs for failing to identify something tangible.  ER-68-72.  The allegations of the Amended Complaint explaining that specific bytes of data are in fact consumed by Google (and that energy is consumed in the process) were intended to show that there is a tangible and precisely defined aspect to Google's conversion "at the time of conversion." *Zerin*, 61 Cal. Rptr. 2d at 709.  Google's argument (at 27) that there is nothing to possess "at any point" is wrong.  There is a measurable amount of cellular data that Google has consumed—to which Plaintiffs are entitled—at the time

11

of Google's conversion.[3]  In any event, intangible interests subject to commerce are property for purposes of the tort of conversion, even if there were nothing tangible about the cellular data consumed by Google.

### 2. Cellular Data Is Capable of Exclusive Possession and Control

While many consumers purchase access to the same carriers' cellular networks, each consumer's contract gives that consumer an exclusive right to transmit the quantity of data the consumer purchased from the carrier.  ER-28, ER-30 (FAC ¶¶ 4, 9).  Consumers expect, and their contracts contemplate, that only they and those they authorize will be able to use their data.  ER-45-46 (FAC ¶¶ 64-67).

Google argues (at 38) that cellular data cannot be exclusively possessed because multiple people can share a data allowance through family plans and corporate plans.  That is absurd.  Under Google's view, anyone who shares a house or a car with family members would lose their property interest in the house or car.  That is not the law.  *See, e.g.*, *People v. Kwok*, 75 Cal. Rptr. 2d 40, 49-50 (Cal. Ct. App. 1998).

Plaintiffs' ability to exclude others from using their cellular data is analogous to the exclusivity in *Rasmussen*.  There*,* this Court found exclusivity because the

---

[3] Google's claim (at 25) that there are no "specific" bytes of cellular data consumed, *e.g.*, when a video is downloaded, is wrong as a matter of fact.  The consumption itself renders the bytes used to view that video specific and identifiable, because they are metered and measured by the cellular provider.  ER-45-47 (FAC ¶¶ 64, 69).

plaintiff had a right to share (or not share) the shortcut airworthiness certification granted by his FAA certificate. *Rasmussen*, 958 F.2d at 903. Similarly, here, consumers with family plans have a right to selectively share (or not share) their cellular data with family members. That right to share with family members does not give third parties like Google a license to steal.

Google also argues (at 38) that Plaintiffs lack a property interest because their cellular data is contingent upon third-party carriers. But that argument cannot be reconciled with either *Rasmussen* or *Kremen*.

In *Rasmussen*, the plaintiff's rights were contingent on the FAA, as the FAA had the power "to alter or revoke the exclusivity of STCs." *Rasmussen*, 958 F.2d at 902 n.11. Like the Plaintiffs' relationships with their wireless carriers, Rasmussen could not use—much less exclusively possess and control—his shortcut right unless the FAA allowed him to do so. Likewise*, in Kremen*, the plaintiff's ability to control his internet domain name was entirely contingent on the internet domain registrar maintaining a proper database and routing traffic to the plaintiff's website. *Kremen*, 337 F.3d at 1030. Nevertheless, the *Kremen* court recognized that the plaintiff had a valid property right, even though it was entirely dependent on the actions of the registrar. *Id.* at 1036.

Against this binding precedent, Google again cites the unpublished district court decision in *Monster Energy*. But as discussed above, that decision

13

misinterprets California law. *See* Part I.A, *supra*. Google also cites *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), which held that personal information such as "a user's location [or] zip code" was not capable of exclusive possession or control. *Id.* at 1075. People do not exclusively possess their location or zip code. And when an app copies such information, that does not deprive the person of that same information. By contrast, when Google consumes some of Plaintiffs' limited cellular data for its own benefit, it deprives the Plaintiffs of the ability to use that cellular data.

### C. Google Consumed Plaintiffs' Cellular Data for Its Own Benefit in a Manner Inconsistent with Plaintiffs' Property Rights

Plaintiffs have satisfied the second element of conversion (injury) by pleading "the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights." *Fremont*, 55 Cal. Rptr. 3d at 638. "Under California law, a plaintiff must only allege that the defendant assumed 'control or ownership over the property' or 'applied the property to his own use'" to plead the second element of a conversion claim. *Graham-Sult v. Clainos*, 756 F.3d 724, 749 (9th Cir. 2014) (citing *Oakdale Village Group v. Fong*, 50 Cal. Rptr. 2d 810, 812 (Cal. Ct. App. (1996)). Plaintiffs have alleged facts that amply meet this standard. The Amended Complaint alleges that: (1) Google secretly consumed Plaintiffs' cellular data, (2) for its own use, (3) without Plaintiffs' consent, and (4) that such transfers were charged to Plaintiffs' accounts with their wireless carriers, thereby reducing

the amount of data Plaintiffs could use without incurring additional charges or throttling.

Google's unauthorized use of Plaintiffs' cellular data is akin to the acts that were found to constitute conversion in *Rasmussen*. There, the defendant did not steal Rasmussen's FAA certificate itself; the defendant instead used it "without authorization" for its own "valuable benefit." 958 F.2d at 906.

Citing *Jordan v. Talbot*, 361 P.2d 20, 28 (Cal. 1961), and *Zaslow v. Kroenert*, 176 P.2d 1, 7 (Cal. 1946) (en banc), Google argues (at 41-45) that the second element of conversion requires a "substantial interference" with Plaintiffs' property, and that "mere 'use' of or 'intermeddling' with property is not sufficient." *Jordan* and *Zaslow* involved defendants who placed the plaintiff's property in storage, but "did not use any of plaintiff's belongings." *Jordan*, 361 P.2d at 27; *Zaslow*, 176 P.2d at 7 ("The defendants did not use the goods."). Google, by contrast, has used Plaintiffs' cellular data for its own benefit, which is conversion. The second element of conversion is "the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights." *Fremont*, 55 Cal. Rptr. 3d at 638. "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, *or that the alleged*

15

*converter has applied the property to his own use*." *Oakdale Village Group*, 50 Cal. Rptr. 2d at 812 (emphasis added). That is precisely what Google has done.

Furthermore, *Welco* held that the defendant converted "a portion of plaintiff's credit card account" for the defendant's own use and benefit without requiring the plaintiff to establish that its entire account had been stolen or that it suffered an overdraft charge or late fee. 166 Cal. Rptr. 3d at 888. *Welco* instructs that cases involving conversion of intangible property are "not physical interference cases" like *Jordan* and *Zaslow*, so principles like substantial interference do not apply. *Id.* at 882.

Google argues (at 44) that Plaintiffs "in fact benefitted from the security updates, enhanced reliability, and services enabled by the passive data transfers." But this is a disputed question of fact that has no place in the context of a motion to dismiss, where Plaintiffs' allegations are liberally construed and taken as true. Moreover, it's just plain wrong. Plaintiffs do not seek compensation for security updates and other network transfers that benefit users; they seek compensation only for the network transfers that Google uses to, for example, secretly build its lucrative advertising and mapping businesses on the backs of consumers.

Finally, Google argues (at 42-43) that Plaintiffs have "waived any argument" on the second (and third) elements of conversion, because "Plaintiffs mischaracterize the District Court as having ruled against them on Article III

16

standing." That's nonsense. ER-5, ER-65. Both inquiries involve essentially the same assessments of whether a redressable injury has been properly pleaded. That Plaintiffs addressed those overlapping issues under the heading of Article III standing does not constitute waiver, which requires the "intentional relinquishment or abandonment of a known right or privilege." *Freedom from Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1152 (9th Cir. 2018) (quotations omitted). Plaintiffs' opening brief amply argues (at 34-41) that they have Article III standing *because* they have pleaded an injury due to Google's use of their cellular data. Plaintiffs did not "intentionally relinquish" anything.

### D. Plaintiffs Have Alleged that They Were Damaged

Google argues (at 46) that Plaintiffs have failed to plead damages, on the theory that they have not alleged that they incurred "overage fees" or were "throttled," or that Google's use of their cellular data "prevented them from using the amount of data for which they already paid." Google is both legally and factually wrong. Google does not cite a single California state decision dismissing a conversion claim on the pleadings for failure to allege damages.

Google incorrectly assumes that Plaintiffs must have suffered *consequential* damages from the loss of their property. That is not the law. In California, it is sufficient to plead even the slightest damages—"the existence of loss or detriment in fact *of any kind*." *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 822 (Cal.

1993) (emphasis added) (quoting Restatement of Torts (2d) § 7). The loss of one's property without compensation satisfies the damages element regardless of whether the person suffered a *monetary* loss.

In *Rasmussen*, this Court found that Rasmussen had shown damages even though he suffered no consequential monetary loss from the defendants' unauthorized use of his FAA certificate. 958 F.2d at 906. There was no injury beyond the defendant's unauthorized copying and use of the plaintiff's certificate for its own benefit—Rasmussen still had his certificate and could still fully use it. *Id.* Nevertheless, he "suffered damages" when his rights under that certificate were used without his consent. *Id.*

And in *DIRECTV, Inc. v. Pahnke*, the only damages were the lack of payment by a satellite TV pirate. 405 F. Supp. 2d 1182, 1189-92 (E.D. Cal. 2005). DIRECTV was found to have suffered damages even though it incurred no additional expenses and was not prevented from broadcasting to any subscribers. *Id.* Damages were shown simply from the defendant's unauthorized hijacking of DIRECTV's broadcasts. *Id.*

Plaintiffs have alleged that cellular data is valuable, and that there is a secondary market in which consumers may sell it to others. ER-36 (FAC ¶ 33) ("Each megabyte or gigabyte of the cellular data has a fair market value, determined by market forces."); ER-36 (FAC ¶ 34) ("Users can also sell unused cellular data.").

18

As a matter of law, the taking of that valuable property damaged Plaintiffs. No further showing is required.

Moreover, Plaintiffs *do* allege that Google prevented them from using data for which they already paid. Plaintiffs paid for their cellular data. ER-32, ER-49 (FAC ¶¶ 14-16, 74). Google's use of some of that data prevents Plaintiffs from being able to use that particular data. ER-48 (FAC ¶ 71). And consumers like Plaintiff Nelson on fixed plans *did* have to buy additional data "from time to time," which may not have been necessary absent Google's ubiquitous passive network transfers. ER-32, 37-38 (FAC ¶¶ 16, 39). Even those who did not incur overage charges suffered harm, because Google's use of their cellular data brought them closer to their data caps and pressured them to limit their own use to avoid overcharges or throttling. ER-51 (FAC ¶ 81).

### E. Google's Resort to "Policy Considerations" and Unidentified Alternate Theories of Recovery Is Misplaced

Google argues (at 40) that this Court should not "expand conversion to the intangible interest at issue here" on the theory that "other theories of recovery are potentially available" and in view of "public policy considerations." Those arguments are misplaced here.

This Court sits in diversity, so its role is limited to applying state law as announced by the state's highest court. The California Supreme Court has already held that intangible interests constitute property that can be the subject of

19

conversion. *Payne*, 54 Cal. at 342; *see also Yuba River Power*, 279 P. at 129; *Kremen*, 337 F.3d at 1030.

Google's suggestion (at 41) that applying principles of conversion here would "interfere with legitimate business activities essential to the functioning of mobile devices" is wrong. Google could have simply disclosed what it was doing and given consumers a meaningful opportunity to consent. Applying the law of conversion to Google's misconduct will simply require Google to be more transparent with consumers, or to pay for its use of cellular data like everyone else does.

This case does not involve "complex policy considerations" on par with those in *Moore v. Regents of Univ. of Cal.*, 793 P.2d 479 (Cal. 1990), which declined to extend property rights to excised human cells out of concern for chilling medical research (and applied a unique body of law regarding human tissue that does not apply here).

Parroting an assertion made by the district court, Google suggests (at 40) that there are other theories of recovery available to Plaintiffs such as "newer economic torts" that might be a more appropriate fit for the circumstances presented here than the law of conversion. But neither Google nor the district court were able to identify any other, supposedly more appropriate, theory of recovery—not one is cited by either.

## II.     Plaintiffs State a Claim for Quantum Meruit

### A.     The First Amended Complaint Pleads Quantum Meruit as an Independent Cause of Action, Not a "Common Count"

Google's lead argument with regard to the quantum meruit claim is that it is a "common count" derivative of the conversion claim. On the basis of this argument, Google asks the Court to ignore the elements of quantum meruit and just summarily dismiss the quantum meruit claim along with conversion. This argument does not pass the red-face test.

In California state practice, a common count is a "simplified form of pleading" that does not otherwise meet "the norms of . . . pleading." *Jogani v. Super. Ct.*, 81 Cal. Rptr.3d 503, 507 (Cal. Ct. App. 2008). Common counts are typically "used to aver the existence of various forms of monetary indebtedness" such as "money had and received." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 127 (Cal. Ct. App. 2004).

California law regarding "common counts" is inapplicable in federal court because it is procedural, not substantive. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Ladewig v. Bank of New York Mellon Corp.*, No. CV-20-4032-MWF, 2020 WL 7084541, at *3 (C.D. Cal. Sept. 22, 2020) (describing common counts as a "rule of California procedure [that] does not apply in federal court"). Pleading standards are a quintessential matter of procedure, and are

21

governed in diversity cases by the Federal Rules of Civil Procedure, not state law. *See Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018-19 (S.D. Cal. 2000).

Rule 8 of the Federal Rules of Civil Procedure adopts a liberal pleading standard that expressly embraces the practice of pleading numerous claims or theories of recovery in the alternative. *See* Rule 8(d)(2). Where a plaintiff pleads alternative claims or theories of recovery, they are to be reviewed "independently" in considering a motion to dismiss. *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1995). Even under California procedure, a Plaintiff may also seek redress based on "alternative legal theories" such as "conversion" and "quasi-contract," and each such claim must be assessed individually. 4 Witkin, Cal. Proc. 6th Plead § 575 (2023).

While Plaintiffs' quantum meruit claim shares many background facts with the conversion claim, the quantum meruit claim is separate and distinct, with different elements and a different factual basis. Unlike the conversion claim, there is no requirement that the plaintiff plead the existence of a property right or that the defendant interfered with that property right. The quantum meruit claim is instead based on the notion that the defendant received a service from the plaintiff, which in equity requires compensation. Plaintiffs' quantum meruit claim is therefore an

alternative theory of liability that must be examined "independently." *Molsbergen*,

757 F.2d at 1019.

### B. California Law Does Not Require that Plaintiffs Themselves Provide the Service

Quoting the district court, Google argues (at 56-57) that Plaintiffs have

failed to state a claim under the equitable doctrine of quantum meruit on the theory

that the Plaintiffs themselves "did not provide a service to Google" and that the

service was instead "rendered by the carriers."  But neither Google nor the district

court has ever cited any California authority for the proposition that the plaintiff

must be the actual provider of a service in order to state a claim for quantum

meruit.  To the contrary, the California Supreme Court has allowed recovery in

quantum meruit for services that were provided by others. *See American-

Hawaiian Engineering & Const. Co. v. Butler*, 133 P. 280, 287 (Cal. 1913)

(allowing general contractor to seek damages in quantum meruit for services

performed by subcontractor).

Principles of equity also support such a result.  Plaintiffs paid wireless

carriers dearly for the right to transmit a defined amount of data over the carriers'

cellular networks.  ER-34-36 (FAC ¶¶ 29-33).  Google then utilized Plaintiffs'

cellular data and charged its use to Plaintiffs' accounts.  It is thus the Plaintiffs who

have been injured, and who have a right to compensation under principles of

equity, not the wireless carriers.

23

The California Supreme Court has held that "[e]quitable relief is by its nature flexible." *Advanced Micro Devices, Inc. v. Intel Corp.*, 885 P.2d 994, 1012 (Cal. 1994). And California Civil Code § 3523 expressly adopts the maxim of equity that "for every wrong there is a remedy." In view of these controlling expressions of California policy, there is no basis to accept Google's rigid and begrudging interpretation of the equitable doctrine of quantum meruit.

### C. California Law Does Not Require Plaintiffs to Affirmatively Plead a Subjective Expectation of Compensation

Google secretly hijacked Plaintiffs' cellular data, consuming a meaningful portion of the cellular data allocated to each Plaintiff for Google's own benefit, and without Plaintiffs' consent. Plaintiffs therefore had no opportunity to develop *any subjective expectations at all* on the subject of compensation, because they did not know what Google was doing. In such cases involving "conversion or similar conduct . . . the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment." *McBride*, 20 Cal. Rptr. 3d at 122; *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (holding that plaintiff may bring "quasi-contract" claim where "defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'") (quoting 55 Cal. Jur. 3d Restitution 360-61 (1980)).

Google relies heavily (at 57) on *Huskinson & Brown v. Wolf*, 84 P.3d 379, 380 (Cal. 2004). But that case sounded in contract, not tort, so the court there had

no opportunity to actually consider the issue presented here. Moreover, the actual issue in *Huskinson* was whether an ethical violation by a law firm prohibited recovery of legal fees in quantum meruit. *Id.* at 381. There was no dispute that the parties did, in fact, expect payment to be made. *Huskinson's* statement of the expectation-of-payment element of quantum meruit is mere *dicta*.

Many quantum meruit cases, like *Huskinson*, involve invalid contracts. In such situations, courts typically seek to enforce the actual subjective expectations of the parties. But that is not the case in quantum meruit actions sounding in tort, which typically involve an unpleasant surprise, not something that the plaintiff expected.

The California Supreme Court's decision in *L.A. Drug Co. v. Superior Court in and for L.A. Cnty.*, 63 P.2d 112 (Cal. 1936) should put this issue to rest. There, the Court found "a promise implied by law" where the defendants stole the plaintiffs' goods, even though there was no evidence or discussion of any subjective expectation of payment. *Id.* at 1126. Tellingly, Google completely ignores this decision.

Google argues (at 63) that the plaintiffs in *Arcturus Mfg. Corp. v. Rork*, 17 Cal. Rptr. 758 (Cal. Ct. App. 1961), expected compensation, but that is incorrect. The company did not even know about the theft of its "secret profits and kickbacks" by its employee. *Id.* at 759. The court in *Arcturus* implied an obligation to pay

25

under principles of "quasi-contract" even though the parties did not subjectively expect compensation. *Id.* at 759, 762.

Google also argues (at 63) that the plaintiff in *Armstrong v. Kubo & Co.*, 263 P. 365 (Cal. Ct. App. 1928) expected compensation, because "the defendants intercepted packages from the mail that the plaintiff had sent to other customers." Again, Google is wrong. The plaintiff in *Armstrong* was a shipping company, not the sender of the merchandise that was stolen. *Id.* at 333. It did not expect compensation from the recipients of the packages at all, given that it was merely delivering them. *Id.* at 333-34. Nevertheless, the court found that the plaintiff shipping company had a valid claim against the thief who stole the packages. *Id.* at 333-36.

As this Court has previously explained, all that is required is that Plaintiffs allege circumstances from which it can be plausibly inferred that they did not intend the services to be "gratuitous." *In re De Laurentiis Ent. Group Inc.*, 963 F.2d 1269, 1272-73 (9th Cir. 1992) ("compensation must be 'expected' only in the sense that the services rendered must not have been intended to be gratuitous"). That is the case here, because plaintiffs bought cellular data for their use, not Google's.

Google tries to limit the holding of *De Laurentiis* to the proposition that compensation need not be expected *from the defendant*. But the Court's rationale was that no subjective expectation of compensation is required at all. *See De*

*Laurentiis*, 963 F.2d at 1273 (citing *Haggerty v. Warner*, 252 P.2d 373, 377 (1953) and *Carey v. Cusack*, 54 Cal. Rptr. 244, 252 (Cal. Ct. App. 1966) for the proposition "no requirement of intent to compensate"). Indeed, both *Haggerty* and *Carey* omit an expectation of compensation from the elements of quantum meruit that they describe. *Haggerty*, 252 P.2d at 377; *Carey*, 54 Cal. Rptr at 252.

The expectation of compensation requirement is limited in this fashion because "[q]uantum meruit is based not on the intention of the parties, but rather on the provision and receipt of benefits and the injustice that would result to the party providing those benefits absent compensation." *De Laurentiis*, 963 F.2d at 1272.

Google argues (at 63) that "thieves steal because they know the owners want to be paid for the things taken." That is precisely the point. Google stole because it thought it could free-ride on plaintiffs' cellular data without being caught. The owners of the cellular data would have wanted compensation had they known about Google's theft, and Google knows it. That is why Google concealed what it was doing. ER-44-45 (FAC ¶¶ 59-62).

California law does not require Plaintiffs to allege facts that establish an actual, subjective expectation of payment by a plaintiff who did not know about the theft at the time. But even if it did, viewed in the light most favorable to the plaintiffs, the Amended Complaint plausibly alleges that Google knew or should have known that plaintiffs would have expected compensation if they had known

about Google's misconduct. *See* ER-28-30, ER-37, ER-41-42, ER-44-46, ER-50 (FAC ¶¶ 1, 6-9, 38, 48-53, 59-62, 67, 78).

Plaintiffs have also stated a claim for quantum meruit because California law creates a presumption that parties at arm's length expect compensation. "Unless the parties are near relatives, the recipient of the services has the burden to prove the defense that the services were rendered gratuitously or without obligation on his part to pay." *Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore*, 76 Cal. Rptr.3d 649, 661 (Cal. Ct. App. 2008); *see also Sowash v. Emerson*, 161 P. 1018, 1021 (Cal. Ct. App. 1916) (same).

California common law has long recognized this presumption and "implied an obligation to pay." *Earhart v. William Low Co.*, 600 P.2d 1344, 1349 (1979); *Carey*, 54 Cal. Rptr. at 252 ("Where services are rendered by one party from which another derives benefit, the law presumes an obligation to pay the reasonable value thereof.").

Google suggests (at 64) that these cases were overruled, stating that *Huskinson* "postdates by decades the cases on which Plaintiffs rely." Not so. *Miller*—the principal case Plaintiffs rely on—was decided in 2008, four years after *Huskinson*.

Google attempts to distinguish *Miller* (and *Sowash*) on the grounds that gratuitousness is presumed only in cases involving "special" services. Incorrect.

The California Supreme Court has held for more than a century that a presumption of an expectation of payment "undoubtedly is the general rule upon this question." *Moulin v. Columbet*, 22 Cal. 508, 509 (1863); *Newbert v. McCarthy*, 214 P. 442, 443 (1923) (citing "general rule that a person receiving the services of another is presumptively bound to pay the reasonable value of the same").

*Sowash* states this same "general rule" that an expectation of payment is presumed as long as the parties are at arm's length, and that the defendant bears the burden of rebutting that presumption. 161 P. at 1021. We know that *Sowash* applied the general rule because, even though neither side offered any evidence of an expectation of payment at all, the plaintiff still won. The recipient of the services was dead, and the plaintiff was barred from testifying, so there was no evidence of any expectation of payment. *Id.* The court nevertheless held in favor of the plaintiff because, under the general rule, an expectation of payment was presumed. *Id*.

Finally, it is worth noting that Google does not dispute that Plaintiffs are not required to plead any injury beyond their entitlement to compensation under equitable principles, in order to state a claim for quantum meruit due to unjust enrichment. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-600 (9th Cir. 2020). The district court's dismissal of Plaintiffs' quantum meruit claim cannot stand.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the district court and remand the case for further proceedings.

Respectfully submitted,

*/s/ Marc A. Wallenstein*
Marc A. Wallenstein
Ryan Z. Cortazar
George A. Zelcs
KOREIN TILLERY, LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
(312) 641-9750
mwallenstein@koreintillery.com
rcortazar@koreintillery.com
gzelcs@koreintillery.com

Carol O'Keefe
Michael E. Klenov
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101-1625
(314) 241-4844
cokeefe@koreintillery.com
mklenov@koreintillery.com

Glen E. Summers
Alison Wheeler
BARTLIT BECK, LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100
glen.summers@bartlit-beck.com
alison.wheeler@bartlit-beck.com

*Counsel for Plaintiffs-Appellants
Joseph Taylor, Edward Mlakar, Mick
Cleary, Eugene Alvis and Jennifer Nelson*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 22-16654

   1.  I am the attorney or self-represented party.

   2.  **This brief contains 6,969 words,** excluding the items exempted by

FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

   3.  I certify that this brief *(select only one)*:

[X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
     [ ] it is a joint brief submitted by separately represented parties.
     [ ] a party or parties are filing a single brief in response to multiple briefs.
     [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  */s/ Marc A. Wallenstein*     **Date**  July 7, 2023
        Marc A. Wallenstein

32

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2023, I caused the Appellants' Reply Brief to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished via the appellate CM/ECF system.

*/s/ Marc A. Wallenstein*
Marc A. Wallenstein